Slip Op. 08-45

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
UNITED STEEL, PAPER AND           :
FORESTRY, RUBBER,                 :
MANUFACTURING, ENERGY, ALLIED     :
INDUSTRIAL AND SERVICE WORKERS    :
INTERNATIONAL UNION, LOCAL        : Before: Richard K. Eaton, Judge
2911,                             :
                                  : Court No. 04-00492
               Plaintiff,         :
                                  :
          v.                      :
                                  :
UNITED STATES SECRETARY           :
OF LABOR,                         :
                                  :
               Defendant.         :
                                  :
```

OPINION AND ORDER

[United States Department of Labor's final negative determination denying plaintiff's application for trade adjustment assistance remanded.]

Dated: April 30, 2008

*Stewart and Stewart* (*Terence P. Stewart*), for plaintiff.

*Jeffrey S. Bucholtz*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*), for defendant.

Eaton, Judge: This matter is before the court following remand. The primary remaining issue is whether the United States Department of Labor's ("Labor" or the "Department") justification for denying plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, Local 2911's ("ISU")[1] request to extend

Weirton Steel Corporation's ("Weirton") Trade Adjustment

Assistance ("TAA") eligibility certification was lawful.  *See*

Letter Dated Sept. 24, 2004 from Labor to Mr. Terence P. Stewart,

Suppl. Admin. R. ("SR") at 16-17 (the "Denial Letter"); Notice of

Determinations Regarding Eligibility to Apply for Worker

Adjustment Assistance and NAFTA Traditional Adjustment

Assistance, 67 Fed. Reg. 22,112 (Dep't of Labor May 2, 2002) (the

"2002 Certification").

In *Independent Steelworkers Union v. United States Secretary

of Labor*, 30 CIT __, Slip Op. 06-171 (Nov. 17, 2006) (not

reported in the Federal Supplement) ("*Steelworkers*"), this court

held that it possessed jurisdiction to review Labor's denial of

plaintiff's request to extend the duration of its 2002 group

eligibility certification.  The court, however, reserved judgment

on the legal and factual justification for the denial pending

Labor's assembly and submission of a complete administrative

record relating to the amendment request.  *See id.* at __, Slip

---

[1]  During the pendency of this action, the court granted plaintiff's consent motion to be substituted in this action as plaintiff.  *See United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, Local 2911 v. United States Sec'y of Labor*, Court No. 04-492*, July 13, 2007 (order substituting party and amending caption).  At all times pertinent to this motion and the development of the facts relevant to this litigation, however, plaintiff was known as Independent Steelworkers Union.  Therefore, for purposes of convenience, the court refers to plaintiff as "ISU."

Op. 06-171 at 3, 30-31.  Accordingly, the court now examines Labor's reasons for the denial.

Plaintiff contends that Labor's denial of its request to extend the 2002 Certification inadequately addressed prior instances where TAA eligibility certifications had been amended to extend their expiration dates.  *See* Pl.'s Rule 56.1 Motion for J. Agency R. ("Pl's Br.") 24-26.  Plaintiff thus maintains that, given the record before it, "the Department failed in its obligation to articulate a satisfactory explanation for its action."  Pl.'s Br. 28.

Labor asserts that it properly denied plaintiff's amendment request.  The Department's primary argument is that it granted past extensions only where production at the workers' plant ultimately ceased.  *See* Denial Letter, SR at 16-17; *see also* Def.'s Motion for Leave to Respond to Pl.'s Suppl. Citations and Resp. to Pl.'s Suppl. Citations ("Def.'s Resp. Pl.'s Suppl. Cit.") 2-3.  Labor claims that an extension of Weirton's certification would be against its established policy because production at the Weirton plant was continued by its purchaser (albeit without those workers now seeking TAA benefits).

While the court has previously found that jurisdiction lies with 28 U.S.C. § 1581(d)(1) (2000) and 19 U.S.C. § 2395(c) or, alternatively, 28 U.S.C. § 1581(i)(4), for the purposes of this opinion, jurisdiction is assumed only under the latter provision. *See* 28 U.S.C. § 1581(i)(4) (stating that the Court has residual

jurisdiction over "administration and enforcement" of, among other determinations, any final determination by Labor concerning the eligibility of workers for TAA benefits); *see also Steelworkers*, 30 CIT at __, Slip Op. 06-171 at 21-30.

For the following reasons, Labor's negative determination embodied in its Denial Letter is remanded.

BACKGROUND

The procedural history and factual background of this matter need not be repeated in their entirety for purposes of this opinion. *See generally Steelworkers*, 30 CIT __, Slip Op. 06-171. Nevertheless, a recapitulation of the salient events preceding and following *Steelworkers* is warranted.

Weirton was a steel producer. Faced with "serious difficulties due to import surges" and financial hardship, the ISU, on Weirton's behalf, successfully petitioned Labor in mid-2001 for eligibility of the Weirton workers to apply for TAA benefits.[2]  Pl.'s Br. 3-4 (citations omitted).  The resulting

---

[2]  The group eligibility requirements for TAA benefits are as follows:

> (a) In general
>
> A group of workers (including workers in any agricultural firm or subdivision of an agricultural firm) shall be certified by the Secretary as eligible to apply for adjustment assistance under this part pursuant to a petition filed under section 2271 of this

(continued...)

<hr>

[2](...continued)
title if [Labor] determines that--

(1) a significant number or proportion of the workers in such workers' firm, or an appropriate subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and

(2)(A)(i) the sales or production, or both, of such firm or subdivision have decreased absolutely;

(ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and

(iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or

(B)(i) there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

(ii)(I) the country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;

(II) the country to which the workers' firm has shifted production of the articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or

(III) there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or

(continued...)

2002 Certification found all Weirton workers who became totally or partially separated from employment on or after July 3, 2000 eligible to apply for TAA cash benefits. *See* 2002 Certification, 67 Fed. Reg. at 22,113. The 2002 Certification was to remain in effect for two years from the date of certification, and thus was to expire on April 23, 2004. *See* 19 U.S.C. § 2291(a). In May 2003, however, approximately one year prior to the 2002 Certification's expiration, Weirton filed for Chapter 11 bankruptcy. *See* Pl.'s Br. 7; *see also* Weirton Steel Corp. Voluntary Pet. Chapter 11 Bankr., AR at 188-89. Thereafter, Weirton officials agreed to sell the company's assets——but not the company itself——to its competitor International Steel Group ("ISG"). *See* Pl.'s Br. 8. To complete the sale, Weirton retained some of its workers to maintain the plant and ensure a smooth transition of the facilities to the new owners.[3] *See*

---

[2](...continued)
    subdivision.

19 U.S.C. § 2272. *See also* 19 U.S.C. §§ 2271, 2273.

[3] At oral argument, plaintiff's counsel explained plaintiff's characterization of why workers were kept on at the plant, and why steel production continued, as follows:

> If you just idle, cold idle a steel mill,
> it's hugely expensive to start it back up.
> You have to keep the furnaces going and while
> you're doing that you make steel, and that
> preserves the assets for the new owners that
> are going to come in and take over the place
> a few weeks later. So yes, it is accurate

(continued...)

Letter Dated Sept. 14, 2004 from Mr. Terence P. Stewart to Labor, SR at 12-15 (the "Stewart Letter").

On March 9, 2004, the ISU filed a new petition with Labor seeking TAA re-certification for Weirton's workers based on facts present during a 2002 - 2003 investigatory period. *See* Weirton Steel Corp. Petition for TAA Dated Mar. 9, 2004 (the "2004 Petition"), AR at 2-40. Labor filed a negative determination with respect to this petition on June 2, 2004, finding that Weirton workers failed to meet the statutory requirements for certification. That is, Labor found that during the 2002–2003 investigatory period: (1) under 19 U.S.C. § 2272(a)(2)(A)(iii), increased steel imports did not contribute importantly to the worker separations, and, (2) under § 2272(a)(2)(B)(i), steel imports had not led Weirton to shift its production to a foreign country. *See* Weirton Steel Corp., Weirton, WV; Negative Determination Regarding Eligibility To Apply for Worker Adjustment Assistance and Alternative Trade Adjustment Assistance (Dep't of Labor May 14, 2004), AR at 101-03 (the "Negative

_____

[3](...continued)
     that steel production continued. But we
     characterize, and the company Weirton
     characterizes what was going on at that time
     to winding down its steel production
     operations before transferring to new
     ownership, new management.

Transcript of Oral Argument at 23, Court No. 04-00492 (July 28, 2005).

Determination"); Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 31,134, 31,135 (Dep't of Labor June 2, 2004) (notice).

Thereafter, on July 23, 2004, Labor denied plaintiff's request for administrative reconsideration of the Negative Determination. *See* Weirton Steel Corp., Weirton, WV; Notice of Negative Determination Regarding Application for Reconsideration (Dep't of Labor July 23, 2004), AR at 195-97 (the "Reconsideration Denial"); Weirton Steel Corp., Weirton, WV; Notice of Negative Determination Regarding Application for Reconsideration, 69 Fed. Reg. 47,184 (Dep't of Labor Aug. 4, 2004) (notice).

On September 14, 2004, having failed to secure benefits by way of a re-certification, the ISU wrote Labor to "formally request that [Labor] amend the [2002] TAA certification to change its expiration date from April 23, 2004, to May 18, 2004, so as to include all workers of Weirton Steel who were adversely affected by increased imports." *See* Stewart Letter, SR at 12-15. The Stewart Letter details the circumstances that Weirton believed justified an amendment to extend the 2002 Certification. Specifically, it recounts that the 2002 Certification's expiration date of April 23, 2004 "came just a few weeks before substantially all of the production assets of Weirton Steel Corporation were acquired out of bankruptcy" by ISG, and that on

May 18, 2004 "Weirton ceased to exist as a producer of steel and [that its remaining] employees were permanently separated from the company."[4]  *Se*e Stewart Letter, SR at 13.  It is those workers who remained with the company for the three to four weeks after the 2002 Certification expired, but before Weirton's sale was completed, that are the subject of Weirton's request to extend the 2002 Certification.  Stewart Letter, SR at 13-14.

According to plaintiff, the remaining workers "were engaged in preserving Weirton's assets and facilities and preparing them for the sale to ISG."[5]  Stewart Letter, SR at 14.  Plaintiff maintained that only an amendment of the 2002 Certification "would ensure that all the workers of Weirton Steel who were adversely affected by increased imports are included under [the 2002] Certification and eligible for needed assistance."  Stewart Letter, SR at 14.

In addition, the Stewart Letter stated that it was plaintiff's "understanding that the Department has previously amended TAA certifications to extend the period of eligibility

---

[4]  The Stewart Letter notes that Weirton "spent several years trying to stave off bankruptcy," which involved "workforce reductions," and then submitted a re-organization plan to the bankruptcy court "which called for eliminating an additional 950 jobs."  *See* Stewart Letter, SR at 13.

[5]  The Stewart Letter recounts Weirton's attempt to file a new petition in 2004 and Labor's Negative Determination and Reconsideration Denial, since sustained by this court in *Steelworkers*.  *See* Stewart Letter, SR at 14; *Steelworkers*, 30 CIT at __, Slip Op. 06-171 at 31.

where workers have been retained beyond the original expiration date of a certification." Stewart Letter, SR at 14, n. 5 (citing O/Z-Gedney Co., Div. of EGS Elec. Group, Terryville, CT; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 43,454 (Dep't of Labor July 20, 2004) ("*O/Z-Gedney*"); Wiegand Appliance Div., Emerson Electric Co., Vernon, AL; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 58 Fed. Reg. 50, 198 (Dep't of Labor Aug. 20, 2003) ("*Wiegand*")).

By letter dated September 24, 2004, Labor denied the ISU's amendment request for two reasons. The first was that the facts presented here were distinguishable from the facts of the two cases cited in plaintiff's amendment request (*O/Z-Gedney* and *Wiegand*), because here production at the plant continued whereas in the other instances "workers were retained to assist with the plant closure *after* production had ceased." *See* Denial Letter, SR at 16 (emphasis added). The second was that, after a "full and careful investigation for the relevant period,"[6] Labor determined that workers' separation from the company was not due

---

[6] The Denial Letter references plaintiff's 2004 Petition and thus the court assumes that Labor's second reason relates to the denial of plaintiff's application for re-certification and not to its application to extend the period of eligibility under the 2002 Certification. It appears, therefore, that Labor conducted no separate investigation relating to the amendment request and consequently made no findings as to whether the workers were adversely affected by imports.

to an increase in imports.  This second reason was apparently a reference to the 2004 Petition for re-certification.  *See* Denial Letter, SR at 16.

In *Steelworkers*, plaintiff sought judicial review of Labor's Negative Determination and Reconsideration Denial concerning its 2004 Petition, as well as the denial of plaintiff's amendment request embodied in Labor's September 14, 2004 Denial Letter. The court sustained Labor's Negative Determination and Reconsideration Denial resulting from plaintiff's 2004 Petition, but denied Labor's motion to dismiss Count IV of plaintiff's complaint (seeking review of the denial of the amendment request) for lack of subject matter jurisdiction.  *See Steelworkers*, 30 CIT at __, Slip Op. 06-171 at 31.  The court, however, reserved judgment on the substantive issues surrounding plaintiff's amendment request "until such time as Labor assembles and submits the administrative record for the requested extension."  *Id.* at __, Slip Op. 06-171 at 3.  Accordingly, *Steelworkers* remanded the matter to Labor "with instructions to assemble and submit to the court the administrative record regarding plaintiff's amendment claim . . . ."  *Id.* at __, Slip Op. 06-171 at 31.

On remand, Labor compiled a Supplemental Administrative Record and filed it with the court on January 29, 2007.  The record consists solely of: (1) the September 14, 2004 Stewart Letter (SR at 12-15); (2) Labor's responsive Denial Letter of

September 24, 2004 (SR at 16-17); and, (3) the January 24, 2007 Declaration of Linda G. Poole, Program Analyst in Labor's Employment and Training Administration, Division of TAA (SR at 1-11, with accompanying exhibits (the "Poole Declaration")).  The Poole Declaration sets forth, what is represented to be, Labor's policy on amending TAA certifications to extend their coverage periods and seeks to explain Labor's amendment that extended benefits in the investigation *AII Technologies, Inc.*, El Paso, TX, 68 Fed. Reg. 43,757 (Dep't of Labor July 24, 2003) ("*AII Technologies*").  *See* Poole Declaration, SR at 1-2.

On February 9, 2007, plaintiff filed a motion to strike the Poole Declaration from the Supplemental Administrative Record. *See* Mot. Strike Doc. 1 From Suppl. Admin. R. ("Pl.'s Mot. Strike").  Plaintiff argued that the Poole Declaration was a "post hoc rationalization" of Labor's denial, because it was dated almost two-and-one-half years after the agency action, and thus could not have been considered by Labor in its decisionmaking process.  *See* Pl.'s Mot. Strike 3.  In opposition, Labor argued that the court's *Steelworkers* decision "expressly raised the question whether Labor had a policy of refusing to extend certifications" and that the Poole Declaration addressed both the existence of that policy and distinguished the specific extensions raised by plaintiff.  *See* Def.'s Opp. Mot. Strike. Doc. One From Suppl. Admin. R. ("Def.'s Opp. Mot. Strike") 1-3.

On April 11, 2007, the court denied plaintiff's motion to strike. *See Indep. Steelworkers Union v. United States Sec'y of Labor*, Court No. 04-00492 (Apr. 11, 2007) (order). The court concluded:

> Ms. Poole's declaration may be included in the record. Although it is dated long after Labor's final determination was made and so was not before Labor at the time of its decision, the declaration sheds light on what is described therein as Labor's "policy with respect to extension of certifications." It does not appear to be a *post hoc* rationalization but rather a good faith effort to describe her understanding of Labor's administration of the trade adjustment program during 2005.

*Id.* at 1-2 (citation omitted).


STANDARD OF REVIEW

In cases under 28 U.S.C. § 1581(i), this Court applies the default standard of review set forth in the Administrative Procedure Act ("APA") and therefore will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." *See* 5 U.S.C. § 706(2); *see also Former Employees of Alcatel Telecomm. Cable v. Herman*, 24 CIT 655, 658-59, Slip Op. 00-88 at 6-7 (2000). "The scope of review under [the] arbitrary and capricious standard is narrow." *Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 27 CIT 1541, 1545, 285 F. Supp. 2d 1371, 1375 (2003) (citations and

quotations omitted).  Under this standard, "the court (1) must consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and (2) analyze whether a rational connection exists between the agency's factfindings and its ultimate action."  *See Consol. Fibers, Inc. v. United States*, 32 CIT __, __, Slip Op. 08-2 at 17 (Jan. 10, 2008) (citations omitted); *see also Cathedral Candle Co.*, 27 CIT at 1545, 285 F. Supp. 2d at 1375 (reasoning that if this standard is met, "the Court will not substitute its own judgment for that of the agency").  Further, the APA provides that, "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

DISCUSSION

I.  Plaintiff's Arguments

Plaintiff maintains that Labor's denial is flawed in several respects.  First, plaintiff argues that Labor failed in its attempt to distinguish, from the facts of this case, two prior instances where it amended the expiration dates of certifications, i.e., *O/Z-Gedney* and *Wiegand*.  *See* Pl.'s Br. 25 (citations omitted).  Labor's Denial Letter noted that, in those

two cited instances, "workers were retained to assist with the plant closure after production had ceased.  That is not the case for workers at Weirton Steel.  Production of steel products at the Weirton, West Virginia plant continued during the period relevant to the investigation."  Denial Letter, SR at 16.

Plaintiff further argues that Labor's Denial Letter is unlawful because it did not reference Labor's "standard" to encompass all workers "adversely affected by increased imports" and failed to explain the phrase "period relevant to the investigation."  *See* Pl.'s Br. 25-26 (quotations and citations omitted).  Plaintiff notes that, in the absence of a standard enunciated in the statute or the regulations, in ruling on expiration date amendment requests, Labor has consistently applied the "standard" that it seeks "to include . . . all workers . . . who were adversely affected by increased imports." *See* Pl.'s Br. 26 (citing *AII Technologies*, 68 Fed. Reg. at 43,757).

Plaintiff additionally argues that Labor did not offer an adequate explanation for its determination or demonstrate a "rational connection" between the facts found and the decision rendered.  Pl.'s Br. 27.

> The several hundred worker separations that
> occurred after April 23[,2004] were, like
> those that occurred earlier, due in large
> part to imports; the chain of causation . . .
> was unbroken.  These terminations would have
> happened earlier but for the efforts of the

> Company to avoid bankruptcy and liquidation
> though a variety of restructuring plans, all
> of which ultimately failed to save the
> company but did preserve some value of the
> assets for sale.

Pl.'s Br. 27.  Plaintiff claims that those workers who remained with Weirton for the several weeks following the 2002 Certification's expiration were, like their counterparts who received benefits, separated from the company as a result of being "adversely affected by increased imports in the earlier time period."  Pl.'s Br. 27-28.  In plaintiff's view, Labor's failure to reference this information in its Denial Letter rendered its determination unlawful.  *See* Pl.'s Br. 28.

II. Labor's Arguments

Labor's brief primarily asserts jurisdictional arguments,[7] however, its arguments for denying plaintiff's amendment request are contained both in (1) Labor's response to plaintiff's motion to strike the Poole Declaration from the record and (2) Labor's response to plaintiff's supplemental citations.

In seeking to include the Poole Declaration in the

---

[7] Labor's decision not to file the administrative record relating to plaintiff's request to amend the 2002 Certification underscores the notion that Labor's first responsive brief does not address this issue in any appreciable fashion.  *See* Def.'s Resp. 16, n. 2.  Labor's reply brief in further support of its motion to dismiss, too, does not address the substance of its denial, but makes only jurisdictional arguments.  *See* Def.'s Reply Pl.'s Resp. Def.'s Mot. Dismiss Count IV Compl.

Supplemental Administrative Record, Labor claimed that the declaration "completes Labor's initial explanation" of the "policy" behind its denial and asserts its belief that the policy was considered in reaching its determination. *See* Def.'s Opp. Mot. Strike 3, 5 (stating that "Labor directly addressed its policy in its denial of ISU's request" and "[t]herefore, Labor's policy regarding requests for extensions is a matter that was considered in reaching the conclusion in this determination") (internal citation omitted).

In responding to plaintiff's list of alleged analogous citations, Labor elaborated:

> [T]he situations addressed by the amendments that extended the time period for coverage of certain workers are not the same as the situation upon which plaintiff based its request to extend the time for an elapsed certification. Here, the undisputed facts are that the company was not closing,[8] it was being sold to a new owner who continued to operate the business . . . .

Def.'s Resp. Suppl. Citations 2.

Put another way, Labor finds the facts here distinguishable from prior cases because Weirton's facility was never fully shut

---

[8] This statement appears to be at odds with the facts. According to the Stewart Letter and as represented by counsel at oral argument, the company was indeed closing, and it was only the manufacturing facility (described as Weirton's "assets and facilities") that was sold to ISG to continue steel production operations. *See* Stewart Letter, SR at 13-14; *see also supra*, n. 3. Weirton continued producing steel in a limited capacity in order to preserve the production assets for the plant's new owner, ISG.

down, as production continued in some limited capacity until the plant was turned over to ISG which continued production.  Thus, the fact that Weirton's plant was sold, but never closed, was the cornerstone of Labor's denial.

III.  Labor Failed Adequately to Explain its Decision

"A fundamental requirement of administrative law is that an agency set forth its reasons for decision."  *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (quotations omitted).  A necessary corollary of this requirement is that the agency's reasoning is presented in a logical fashion "such that a court may follow and review its line of analysis, its reasonable assumptions, and other relevant considerations."  *Int'l Imaging Materials, Inc. v. United States Int'l Trade Comm'n*, 30 CIT __, Slip Op. 06-11 at 13 (2006) (not reported in the Federal Supplement) (quotations omitted).  "Explanation is necessary . . . for this court to perform its statutory review function."  *Id.* at __, Slip Op. 06-11 at 13.  This court "must know what a decision means before the duty becomes ours to say whether it is right or wrong."  *Atchinson, T. & S.F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807 (1973) (quotations omitted).

Labor's Denial Letter gives two reasons justifying its refusal to extend the 2002 Certification.  *See* Denial Letter, SR at 16.  The first is that the *O/Z Gedney* and *Wiegand*

certifications cited by plaintiff as precedent for its claim are distinguishable from the facts presented here.  Specifically, Labor states that, unlike here, both earlier certifications involved situations where "workers were retained to assist with the plant closure *after* production had ceased."  Denial Letter, SR at 16 (emphasis added).  The second reason is that Labor "conducted a full and careful investigation" relative to Weirton's 2004 Petition for re-certification, which resulted in a negative determination, and therefore that Labor concluded that the relevant Weirton workers were not adversely impacted by increases in imports.[9]  Denial Letter, SR at 16.

With respect to the first argument, Labor has set forth a purported factual distinction between this matter and those others cited by plaintiff.  Labor's Denial Letter, however, fails

---

[9] Labor now maintains that it lacks authority to extend the 2002 Certification beyond April 23, 2004 and that it exceeded its authority in the past when extending expiration dates.  *See* Def.'s Resp. Suppl. Citations 1-2.  Labor's purported lack of authority was not raised in its Denial Letter, but rather first raised at oral argument, and then in its supplemental briefs.  Labor's position is unpersuasive as this ground was not invoked by Labor in its Denial Letter in the first instance, but rather was first invoked before the court.  "The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . . For the courts to substitute their or counsel's discretion for that of the [agency] is incompatible with the orderly functioning of the process of judicial review."  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) (quotation omitted).  Indeed, the Denial Letter seems to say that, had Weirton's facts been as those in *O/Z Gedney* and *Wiegand*, the extension would be within the precedent and thus presumably approved.  *See* Denial Letter, SR at 16.

to explain why this factual distinction matters.  According to Labor, the end result for the workers in *O/Z Gedney* and *Wiegand* is that they were separated from their jobs.  Denial Letter, SR at 16.  The evidence here indicates that, within three to four weeks of the 2002 Certification's expiration, all of Weirton's workers lost their jobs.  Stewart Letter, SR at 13.  In the *O/Z Gedney* and *Wiegand* cases the manufacturing facilities were seemingly closed.  Here, the facility was sold to another corporation, but never fully shut down.  The Department seems to suggest that it is significant that the facility was kept in operation after its transfer to ISG.  Labor fails, however, to say why this fact is significant.  For the court, the salient facts in the *O/Z Gedney* and *Wiegand* line of investigations and *Weirton* are the same.  That is, in each case (1) the company's workers were found eligible for benefits; (2) certain workers were retained for some time after the expiration of the certification; and, (3) the jobs of those workers were then terminated.

As to its second reason, the Department's apparent references to its re-certification investigation are wholly irrelevant to the separate issue of whether it should grant an extension to the 2002 Certification.  In other words, there does not appear to be any connection between the denial of the March 9, 2004 application for re-certification (which would have re-

certified Weirton workers as eligible to apply for benefits for up to two years from the date of certification) and the process resulting in the decision not to extend the 2002 Certification (which would have made Weirton workers eligible to apply for benefits up through and including May 18, 2004).  Nor is there any evidence that Labor conducted any investigation under 19 U.S.C. §§ 2271 and 2272 when making its determinations to extend the period of certification in other cases.  *See O/Z Gedney*, 69 Fed. Reg. at 43,454; *Wiegand*, 68 Fed. Reg. at 50,198.  This court, therefore, particularly in light of Labor's reference to an "investigation," cannot say that Labor has "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *See Former Employees of Chevron Prods. Co. v. United States Sec'y of Labor*, 27 CIT 1135, 1143, 279 F. Supp. 2d 1342, 1349 (2003) (internal citations and quotations omitted).

The inadequacy of Labor's explanation is amplified by the cases cited by plaintiff in its list of supplemental citations, as requested by the court at oral argument.  *See* Pl.'s Suppl. Citations Cert. Amendments ("Pl.'s Suppl. Cit.").  Plaintiff cites eleven cases in which Labor amended the expiration date of worker certifications.  The court's review of these matters reveals that, in recent years, Labor has amended certification periods to cover workers who remained employed beyond the

original expiration date in a wide variety of circumstances.

For instance, Labor has extended benefits to workers on both a prospective basis (i.e., where the amendment was made before the workers were separated from the company but after the date of their planned separation was known) and retroactive basis (i.e., where the amendment was made after the workers were separated from the company). *Compare* Motorola, Inc. Pers. Commc'ns Sector, Harvard, IL; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 68 Fed. Reg. 17,675 (Dep't of Labor Apr. 10, 2003) (on April 10, 2003, extending a certification set to expire on April 13, 2003, until August 15, 2003), *with* Carlisle Engineered Prods., Erie, PA; Amended Certification To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 6,693 (Dep't of Labor Feb. 11, 2004) ("*Carlisle*") (on February 11, 2004, extending the certification that previously expired on January 29, 2004, until May 31, 2004).

Labor has also extended certification periods without regard to whether the extension benefitted a single worker or multiple workers. *Compare* Cooper Wiring Devices--Georgetown, SC; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 52,311 (Dep't of Labor Aug. 25, 2004) (one worker), *with* Wolverine Worldwide, Inc., Kirksville, MO; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 68 Fed. Reg. 6,216 (Dep't

of Labor Feb. 6, 2003) (one worker) ("*Wolverine*"), *with Carlisle*, 69 Fed. Reg. at 6,693 (unspecified amount of multiple workers). Likewise, Labor has amended certification periods regardless of whether the petition was brought by the employer or by a state agency. *Compare O/Z Gedney*, 69 Fed. Reg. at 43,454 (noting that the amendment request was made by a "company official"), *with Wolverine*, 68 Fed. Reg. 6,217 (noting that the amendment request was made by "the company and the State agency"), *and* Lomac LLC, Muskegon, MI; Amended Certification Regarding Eligibility To Apply for Worker Adjustment Assistance, 69 Fed. Reg. 46,573 (Dep't of Labor Aug. 3, 2004) (noting that the amendment request was made solely by a "state agency representative").

Furthermore, and most significantly, although Labor now argues that it only grants extensions where production at the workers' plant ultimately ceases, plaintiff cites two situations where it is unclear whether the plant in question ultimately closed. *See Wiegand*, 68 Fed. Reg. at 50,198; *AII Technologies*, 68 Fed. Reg. at 43,757. In these cases, Labor's published Federal Register notices indicate only that the "company closed," but do not state whether the production facility itself closed, or perhaps remained operational under different ownership, as is the case here. In sum, the court's review of those matters cited by plaintiff provides little guidance as to the criteria by which Labor assesses amendment requests.

Additionally, in this instance Labor relies on its "policy" not to extend certifications under plaintiff's circumstances. But, this reference to its policy does not allow this court, in hindsight, to "follow and review its line of analysis, its reasonable assumptions, and other relevant considerations." *Int'l Imaging Materials, Inc.*, 30 CIT at __, Slip Op. 06-11 at 13 (quotations omitted). The court's review of the citations provided by plaintiff demonstrates that Labor has had a clear policy of extending certifications. *See generally* Pl.'s Suppl. Cit.; *see also* Poole Declaration, SR at 1-2. Indeed, Labor has cited no case where it turned down an application for an extension. *See generally* Def.'s Resp.; Def.'s Resp. Pl.'s Suppl. Cit.; Def.'s Opp. Mot. Strike.

It is well-settled that "[a]n agency is obligated to follow precedent, and if it chooses to change, it must explain why." *M.M. & P. Mar. Advancement, Training, Educ. & Safety Program v. Dep't of Commerce*, 729 F.2d 748, 755 (Fed. Cir. 1984). Although an agency may modify its policies even absent a statutory change, it must always justify the reason for making the change. *See Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970) ("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without

discussion it may cross the line from the tolerably terse to the intolerably mute.") (footnotes omitted).

Here, Labor has failed to supply the court with any justification or explanation of its claimed evolving policy regarding amendments under the circumstances presented here, let alone a "reasoned analysis." *See British Steel PLC v. United Stated*, 127 F.3d 1471, 1475 (Fed. Cir. 1997); *Atchinson, T. & S.F. Ry. Co.*, 412 U.S. at 807-08 ("Whatever the ground for [an agency's] departure from prior norms . . . it must be clearly set forth so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate."). Moreover, Labor did not "explain its application of the law to the found facts," which reveal that, though production did not cease at the Weirton plant, the Weirton workers were all separated from the company within weeks of April 23, 2004. *See In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002). Labor's actions were thus arbitrary and capricious, an abuse of discretion, and not in accordance with law, and, therefore, a further remand is warranted. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-44 (1983) (reasoning that an action is arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, [and] offered an explanation for its decision that runs counter to the evidence").

CONCLUSION

Based on the foregoing, the court remands this case to Labor.  On remand, Labor is ordered to: (1) clarify the basis of and fully explain any decision it reaches; (2) establish the facts upon which it makes its determination and state precisely why it is, or is not, significant that the Weirton plant did not close; (3) clearly explain why, if it all, the Weirton workers who lost their jobs after April 23, 2004, should be treated differently than those who lost their jobs prior to that date; (4) set forth its current and past policy regarding amendments to the expiration date of certifications; (5) explain how this case is different, if at all, from previous cases where it extended worker certifications; (6) set forth all steps, if any, taken to change its policy with respect to extensions, including any measures taken to notify the public, and the dates on which all such steps were undertaken; (7) set forth the criteria upon which it makes any determination to extend or not to extend the subject certification; and (8) explain why its determination is in accord with the remedial nature of the TAA statute.

Remand results are due August 28, 2008.  Comments to the remand results are due September 29, 2008.  Replies to such

comments are due October 13, 2008.


                                        /s/ Richard K. Eaton
                                         Richard K. Eaton



Dated:      April 30, 2008
            New York, New York

ERRATUM

*United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union, Local 2911 v. United States Sec'y of Labor*, Court No. 04-492, Slip Op. 08-45 (Apr. 30, 2008).

Page 1:   "J. Daniel Stirk and Sarah V. Stewart" are added after the name "Terence P. Stewart" as counsel for plaintiff.


May 12, 2008